HON. RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| CRYSTAL HOWERY,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS,<br><br>Defendant. | No. 14-cv-01814 RAJ<br><br>**DEFENDANT UNION'S MOTION FOR SUMMARY JUDGMENT**<br><br>Note for Motion:<br>September 11, 2015 |

## MOTION

Pursuant to Federal Rule of Civil Procedure 56, Defendant International Association of Machinists and Aerospace Workers ("Union") hereby moves the Court for summary judgment dismissal of Plaintiff Crystal Howery's claims. This motion and memorandum are supported by the record submitted herewith and by the files of this Court.

## STATEMENT OF THE CASE

The Union is the collective bargaining representative for the Puget Sound area production and maintenance employees employed by The Boeing Company ("Company"). (Jackson Decl. ¶ 2) The Company and Union are parties to a collective bargaining agreement. (Id.) The contract provides for a grievance and arbitration procedure for the resolution of disputes arising under the contract. (Id.) The contract also provides that employees may be discharged for "cause." (Id.)

DEFENDANT UNION'S MOTION FOR
SUMMARY JUDGMENT  - 1

ROBBLEE DETWILER & BLACK
ATTORNEYS at LAW
================================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121-2392
206.467.6700 · 206.467.7589 facsimile

Plaintiff's Employment

The Company extended an offer of employment to the Plaintiff in November 2011. (Jackson Decl. ¶ 5) In connection with this offer of employment, Plaintiff was told to report to orientation on December 9, 2011. (Id.) This report date rendered Plaintiff ineligible to receive the $5,000 contract ratification bonus paid to all represented employees on the payroll on December 2, 2011. (Jackson Decl. ¶ 4)

Despite having been given an orientation date of December 9, 2011, Plaintiff showed up at the December 2, 2011 orientation. (Jackson Decl. ¶ 6) Plaintiff arrived late to the orientation and was asked to sit down so as not to disturb the presentation that was already in process. (Id.) Plaintiff received a Union orientation packet and signed some generic Boeing forms. (Id.) Next, the HR workers began handing out personalized documents to each attendee specifying which manager they were supposed to report to. (Id.) Because she had arrived a week early, there were no personalized documents for the Plaintiff. (Id.) At this point, the HR staff realized the Plaintiff was not supposed to be there and asked her to leave and come back the next week. (Id.) Plaintiff officially began work on December 9, when she returned for her scheduled orientation. (Id.) Plaintiff did not receive the ratification bonus and was not paid for her premature attendance at the December 2 orientation. (Id.)

Early in her employment, Plaintiff notified the Company that she had a disability and needed an accommodation. (Jackson Decl. ¶ 10) The Company was initially able to accommodate the Plaintiff but later some questions developed about the extent of her medical restrictions and accommodations. (Id.) The Company ultimately placed the Plaintiff on a leave of absence and informed her that she was required to undergo a fitness for duty evaluation before she could return to work. (Id.)

DEFENDANT UNION'S MOTION FOR
SUMMARY JUDGMENT  - 2

ROBBLEE DETWILER & BLACK
ATTORNEYS at LAW
============================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121-2392
206.467.6700 · 206.467.7589 facsimile

The Plaintiff's fitness for duty examination was originally scheduled for April 9, 2012, but was subsequently rescheduled to May 10, 2012, at her request. (Jackson Decl. ¶ 11)  The Plaintiff was two hours late for the rescheduled exam. (Id.)  When she arrived, the Plaintiff refused to sign the form authorizing the independent medical examiner to release the results of the examination to the Company. (Id.)  As a result, no examination took place. (Id.)

Thereafter, on May 31, 2012, the Company sent the Plaintiff a letter informing her that she would be terminated unless she did two things: (1) sign the informed consent form by June 7 and (2) attend a fitness for duty exam on June 12. (Jackson Decl. ¶ 12, Ex. A)  The Plaintiff submitted an altered informed consent form on June 7. (Id., Ex. B)  The Plaintiff had crossed out every line of text on the form and typed in her own language in the margins. (Id.)  In the language that she typed, the Plaintiff agreed to attend the fitness for duty examination, but did not authorize the release of the test results to the Company. (Id.)

On that same day, Company representatives left the Plaintiff a voicemail and sent her an email informing her that if she did not submit an unaltered, signed consent form, then her employment would be terminated. (Jackson Decl. ¶ 13, Ex. C)  The Plaintiff did not submit the form. (Id.)  Accordingly, the Plaintiff's employment was terminated the following day. (Id.)

### Complaints to the Union

<u>Bonus and Pay for 12/2/11</u> – Plaintiff complained to Union Business Representative Richard Jackson that she was not paid for attending orientation on December 2, 2011 and that she did not receive the ratification bonus. (Jackson Decl. ¶ 4)  Jackson obtained evidence that Plaintiff's offer of employment listed a December 9, 2011 start date. (Jackson Decl. ¶ 5)  Jackson also confirmed that Plaintiff was not on the list of scheduled attendees for the December 2 orientation, but was scheduled for the session on December 9. (Jackson Decl. ¶ 7)  Likewise,

DEFENDANT UNION'S MOTION FOR
SUMMARY JUDGMENT  - 3

ROBBLEE DETWILER & BLACK
ATTORNEYS at LAW
============================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121-2392
206.467.6700 · 206.467.7589 facsimile

Plaintiff did not report to work after the December 2 orientation and did not appear on the Company work roster until December 9. (Id.)

Based on his investigation, Jackson concluded that the Plaintiff officially started work on December 9, 2011. (Jackson Decl. ¶ 8)  This start date rendered her ineligible for the $5,000 ratification bonus. (Id.)  Jackson did not think that the Union would prevail in a grievance challenging the Company's refusal to pay her the ratification bonus or for her time at the earlier orientation session. (Id.)  Jackson sent the Plaintiff a letter stating that he had concluded that her grievance lacked sufficient merit to warrant further action. (Id.)  The letter further informed the Plaintiff of her right to appeal Jackson's decision to the Union President, Tom Wroblewski. (Id.)

The Plaintiff appealed Jackson's decision to Wroblewski. (Jackson Decl. ¶ 9) Wroblewski forwarded a copy of the appeal to Jackson for him to review. (Id.)  Jackson informed Wroblewski that the appeal did not provide any information that would change his decision. (Id.)  Wroblewski next referred the appeal to the Union Grievance Coordinator, Emerson Hamilton, to review and evaluate. (Hamilton Decl. ¶ 6)  Hamilton reviewed the appeal and Jackson's file. (Id.)  At the end of his review, Hamilton recommended that Wroblewski uphold Jackson's decision denying the grievance. (Id.) Wroblewski ultimately came to the same judgment as Hamilton and Jackson, concluding that there was insufficient merit to proceed to arbitration. (Id.)  The Plaintiff was sent a letter denying her appeal. (Id.)

<u>Leave of Absence and Termination</u> – The Plaintiff also complained to the Union about being placed on a leave of absence and subsequently terminated. (Jackson Decl. ¶ 14)  Jackson investigated both issues. (Id.)  Jackson concluded that the Company did not violate any term in the collective bargaining agreement when it placed the Plaintiff on a leave of absence. (Id.)  As to the termination, Jackson concluded that the Company had clearly informed the Plaintiff of

DEFENDANT UNION'S MOTION FOR
SUMMARY JUDGMENT  - 4

ROBBLEE DETWILER & BLACK
ATTORNEYS at LAW
================================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121-2392
206.467.6700 · 206.467.7589 facsimile

what she had to do to stay employed. (Id.)  The Plaintiff repeatedly failed to do what was required. (Id.)  In Jackson's opinion, the Company was reasonable in asking her to sign the form releasing the results of the independent medical examination. (Id.)  Based on these facts, Jackson concluded that the Company had "cause" to terminate the Plaintiff. (Id.)

The Plaintiff was again mailed a letter informing her of Jackson's decision and advising her of her appeal rights. (Jackson Decl. ¶ 15)  The Plaintiff appealed this decision and went through the same appeal process. (Id.; Hamilton Decl. ¶ 5, 6)  At the conclusion of that process, Hamilton and Wroblewski again concluded that there was insufficient merit to warrant a formal grievance on her behalf. (Hamilton Decl. ¶ 6)

## Post-Termination

One year after her termination, in June 2013, the Plaintiff filed a Notice of Charge of Discrimination with the U.S. Equal Employment Opportunity Commission against the Union. (Detwiler Decl. ¶ 2, Ex. A)  Plaintiff received a right to sue letter on January 29, 2014 informing her that she had 90 days to sue based on her charge. (Detwiler Decl. ¶ 3, Ex. B)  On the last day to timely file suit, April 29, 2014, Plaintiff filed an Employment Discrimination Complaint against the Union. (Dkt. 1)  Plaintiff's Complaint alleges violations of Title VII, the Civil Rights Act,[1] the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), the Genetic Information Nondiscrimination Act ("GINA"), the Equal Pay Act ("EPA"), and the Lilly Ledbetter Fair Pay Act.[2] (Dkt. 1, p. 2 ¶ 4(d))

---

[1]  Plaintiff did not specifically identify what Civil Rights Act the Union allegedly violated.  Plaintiff was asked in an interrogatory whether she was pursuing a claim for violation of a Civil Rights Act other than her Title VII claims under the Civil Rights Act of 1964. (Detwiler Decl. ¶ 4)  Plaintiff did not answer the interrogatory. (Id.) As such, her claim for violation of the "Civil Rights Act" is properly treated as her Title VII claim.

[2]  The Complaint additionally alleges a general claim for "other violations of the law." (Dkt. 1, p. 2 ¶ 4(d)) Plaintiff was asked in an interrogatory to identify any "other violations of the law" that she alleged the Union violated. (Detwiler Decl. ¶ 4)  Plaintiff did not answer this interrogatory and should be precluded from identifying any new claims for the first time in her opposition to summary judgment. (Id.)

DEFENDANT UNION'S MOTION FOR
SUMMARY JUDGMENT  - 5

ROBBLEE DETWILER & BLACK
ATTORNEYS at LAW
==========================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121-2392
206.467.6700 · 206.467.7589 facsimile

Prior to filing this Motion for Summary Judgment, the Union first filed a 12(b)(6) Motion to Dismiss followed by a second Motion to Dismiss for Failure to Prosecute. (Dkt. 46, 53)  The Court has yet to rule on either motion.  By separate notice filed today, the Union withdraws its 12(b)(6) Motion to Dismiss.

**ARGUMENT**

**I.  SUMMARY JUDGMENT, FAR FROM BEING A DISFAVORED TACTIC, IS AN "INTEGRAL PART" OF TESTING AND RESOLVING THE PLAINTIFF'S CASE.**

The Supreme Court, in one of its pivotal cases construing the summary judgment standard under Federal Rule of Civil Procedure 56, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986), instructed that, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole."  The Court recognized that the interests of the moving party are every bit as important as those of the non-moving party:

> Rule 56 must be construed with due regard not only for the rights of the persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

Id. at 327.  As the non-moving party, the Plaintiff must "designate specific facts showing that there is a genuine issue for trial." Id. at 324.  Unsupported suspicions or allegations are insufficient to defeat a properly supported summary judgment motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

DEFENDANT UNION'S MOTION FOR SUMMARY JUDGMENT  - 6

ROBBLEE DETWILER & BLACK
ATTORNEYS at LAW
=============================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121-2392
206.467.6700 · 206.467.7589 facsimile

II. **PLAINTIFF'S DISCRIMINATION CLAIMS ARE PROPERLY DISMISSED. PLAINTIFF CANNOT PROVE A PRIMA FACIE CASE OF DISCRIMINATION BY THE UNION.**

   A. <u>In The Ninth Circuit, A Plaintiff Alleging Discrimination By A Union Must Prove Three Elements.  Failure To Establish Any Element Requires Dismissal Of Plaintiff's Claim.</u>

Title VII, the ADEA and the ADA prohibit discrimination by labor organizations on the basis of protected characteristics.  42 U.S.C. § 2000e-2(c)(1); 29 U.S.C. § 623(c); 42 U.S.C. § 12111(2).  In the Ninth Circuit, discrimination claims against labor organizations are evaluated under a modified version of the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>Beck v. United Food & Commercial Workers Local 99</u>, 506 F.3d 874 (9th Cir. 2007).  A plaintiff alleging discrimination by a labor organization must establish: (1) the employer violated the collective bargaining agreement with respect to the employee; (2) the labor organization breached its duty of fair representation by allowing the breach to go unrepaired; and (3) that some evidence indicates that the employee was singled out and treated less favorably than others similarly situated on account of an impermissible criterion. <u>Beck</u>, 506 F.3d at 882-884 n. 4.[3]  The failure to establish even one of these elements is grounds for summary judgment.  <u>Lyons v. England</u>, 307 F.3d 1092, 1113 (9th Cir. 2002) ("plaintiff's failure to offer evidence establishing a necessary element of her prima facie case will ordinarily be fatal to her claim").

If the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the labor organization to articulate a legitimate, nondiscriminatory reason for the less

---

[3]   District courts in the Ninth Circuit have consistently applied the prima facie test identified in <u>Beck</u>. <u>See e.g.</u> <u>Mulvihill v. Pacific Maritime Ass'n</u>, 2013 LEXIS 21482, 10-CV-1811TSZ (W.D. Wash. 2013); <u>Radford v. HERE Local 2</u>, 2011 LEXIS 70159, 10-CV-00745 (N.D. Cal. 2011); <u>Nosie v. Ass'n of Flight Attendants</u>, 2010 LEXIS 122689, 10-CV-00062 (D. Haw. 2010), <u>aff'd</u> 472 Fed. Appx. 802 (2012); <u>Bane v. Sailors' Union of the Pacific</u>, 2008 LEXIS 12234, 05-CV-00577 (D. Haw. 2008).

DEFENDANT UNION'S MOTION FOR
SUMMARY JUDGMENT  - 7

ROBBLEE DETWILER & BLACK
ATTORNEYS at LAW
================================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121-2392
206.467.6700 · 206.467.7589 facsimile

favorable treatment. Beck, 506 F.3d at 883; Pejic v. Hughes Helicopters, Inc., 840 F.2d 667, 674 (9th Cir. 1988). The burden then shifts back to the plaintiff to prove that the reason given is a pretext for intentional discrimination. Id.

Plaintiff alleges that the Union discriminated against her by "refus[ing] to grieve, arbitrate, intervene or fairly represent" her. (Dkt. 1, p. 2(d))  As next seen, the Plaintiff cannot make out a prima facie case of discrimination against the Union under the controlling Ninth Circuit framework.

### B. Plaintiff Cannot Prove Any Of The Three Required Elements To Establish A Prima Facie Case Of Discrimination Against The Union.

#### 1. Plaintiff expressly disavowed alleging any breach of the collective bargaining agreement.

In response to an earlier motion to dismiss, Plaintiff specifically stated that she "has not alleged violations of the contract between Local 751 and Boeing" and that she "has never alleged contract violations in any of her pleadings or complaint." (Dkt. 40, p. 2)  As Plaintiff admits that she does not allege a breach of the collective bargaining agreement between the Union and Company, she cannot make out a prima facie case of discrimination against the Union. Plaintiff's discrimination claims are properly dismissed.

#### 2. Plaintiff cannot prove a breach of the duty of fair representation.

In order to satisfy the second criterion, the Plaintiff must show that the Union breached its duty of fair representation.  The Supreme Court has recognized that the scope of the duty of fair representation should be interpreted narrowly so as to preserve union discretion to decide how best to balance the collective and individual interests of represented employees.

> Any substantive examination of a union's performance, therefore, must be highly deferential, recognizing the wide latitude that [union officers] need for the effective performance of their bargaining responsibilities.

DEFENDANT UNION'S MOTION FOR
SUMMARY JUDGMENT  - 8

ROBBLEE DETWILER & BLACK
ATTORNEYS at LAW
================================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121-2392
206.467.6700 · 206.467.7589 facsimile

Air Line Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 78 (1991).  The Court has thus narrowly construed the duty so to allow unions wide discretion in the representation of their members.  Ford Motor Co. v. Huffman, 345 U.S. 330, 337-38 (1953).

Consistent with this narrow construction, the Supreme Court has set an extraordinarily high standard for proving a breach of a union's duty of fair representation.  A union violates its duty of fair representation *only* when its conduct is "arbitrary, discriminatory, or in bad faith."  O'Neill, 499 U.S. at 67.  Hence, in order for the Plaintiff to prevail, she must show that the Union's decision not to file a grievance on her behalf was arbitrary, discriminatory, or in bad faith.

The duty of fair representation prohibits only "invidious" discrimination based on protected categories.  O'Neill, 499 U.S. at 81.  A union does not engage in invidious discrimination when it merely treats represented employees differently based on other non-protected considerations. This is necessary because "inevitable differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid.  The complete satisfaction of all who are represented is hardly to be expected." Ford Motor, 345 U.S. at 338.

To prove "bad faith" in connection with a duty of fair representation claim, a plaintiff must demonstrate that the union acted with "deliberate and severely hostile and irrational motivation." Motor Coach Employees v. Lockridge, 403 U.S. 274, 301 (1971).  A "disagreement between a union and the employee over a grievance, standing alone, does not constitute evidence of bad faith, even when the employee's grievance is meritorious." Moore v. Bechtel Power Corp., 840 F.2d 634, 637 (9th Cir. 1988).   Rather, to defeat summary judgment on the issue of

DEFENDANT UNION'S MOTION FOR
SUMMARY JUDGMENT  - 9

ROBBLEE DETWILER & BLACK
ATTORNEYS at LAW
==============================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121-2392
206.467.6700 · 206.467.7589 facsimile

bad faith, a plaintiff must offer "evidence of fraud, deceitful action or dishonest conduct by the union." Lockridge, 403 U.S. at 299.

Finally, a claim of union discrimination or hostility must be based on "specific facts," not speculation and allegations. Anderson, 477 U.S. at 248; FRCP 56(e).  A plaintiff "must set forth concrete, specific facts from which one can infer a union's hostility, discrimination, bad faith, dishonesty or arbitrary exercise of discretion.  Conclusory allegations, without specifying supporting facts to show the union's lack of good faith, fail to state a valid claim." Spielmann v. Anchor Motor Freight, 551 F. Supp. 817, 822 (S.D. N.Y. 1982).[4]  See e.g. Braxton v. United Parcel Service, 806 F. Supp. 537, 544 (E.D. Pa. 1992) (dismissing duty of fair representation claim of bad faith based on nothing more than "vaporous assumptions of generalized bias"). Here, the Plaintiff has no specific facts supporting a claim of discrimination, bad faith or hostility by the Union.  The Plaintiff simply disagrees with the Union's evaluation of her grievances. This disagreement does not constitute evidence of bad faith or discrimination.

Nor does Plaintiff have evidence proving that the Union acted in an arbitrary manner in evaluating the merits of her grievances.  Union conduct is arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." O'Neill, 499 U.S. at 67.  This "'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." Marquez v. Screen Actors Guild, 525

---

[4]   For other cases dismissing duty of fair representation claims on the basis of insufficient evidence see Jeffreys v. CWA, 354 F.3d 270, 276-77 (4th Cir. 2003) (granting summary judgment where there was no evidence in the record that the union was motivated by animosity or personal hostility toward the plaintiffs); Crider v. Spectrulite Consortium, 130 F.3d 1238, 1243 (7th Cir. 1997) (dismissing claim where local tried to assist plaintiff and plaintiff could "not point to any conduct by the local officials that would suggest they treated him with disfavor"); Smith v. United Parcel Service, 96 F.3d 1066, 1069 (8th Cir. 1996) (claim that union discriminated against member for "rocking the political boat" insufficient to rebut evidence that union adequately represented member); Trnka v. UAW Local 688, 30 F.3d 60, 63 (7th Cir. 1994) (bare assertions that decision to drop grievance was in retaliation of past criticism of union leadership insufficient to survive summary judgment).

DEFENDANT UNION'S MOTION FOR
SUMMARY JUDGMENT  - 10

ROBBLEE DETWILER & BLACK
ATTORNEYS at LAW
=============================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121-2392
206.467.6700 · 206.467.7589 facsimile

U.S. 33, 45-46 (1998). Accordingly, union conduct "may not be deemed arbitrary simply because of an error in evaluating the merits of a grievance." <u>Stevens v. Moore Business Forms</u>, 18 F.3d 1443, 1447-48 (9th Cir. 1994). Courts thus "do not scrutinize the quality of the union's decision." <u>Slevira v. Western Sugar Co.</u>, 200 F.3d 1218, 1221 (9th Cir. 2000). Nor do courts "attempt to second-guess a union's judgment." <u>Peterson v. Kennedy</u>, 771 F.2d 1244, 1254 (9th Cir. 1985).

Only "wholly irrational" actions violate the arbitrariness standard. <u>O'Neill</u>, 499 U.S. at 78. Where a union has exercised its judgment, it cannot be said to have acted in a "wholly irrational" or arbitrary manner. <u>Marino v. Writers Guild of America</u>, 992 F.2d 1480, 1486 (9th Cir. 1993). Indeed, the Ninth Circuit has "never held that a union has acted in an arbitrary manner where the challenged conduct involved the union's judgment as to how best to handle a grievance." <u>Truesdale v. S. Cal. Permanente Med. Corp.</u>, 293 F.3d 1146, 1153 (9th Cir. 2002), <u>citing</u> <u>Peterson</u>, 771 F.2d at 1254.

The Plaintiff thus cannot meet her burden by simply alleging that the Union should have filed a grievance regarding her various issues. So long as the Union made a good faith, non-discriminatory judgment about the merits of a grievance, no breach of the duty of fair representation was committed.

Three different Union representatives evaluated the merits of a grievance on the Plaintiff's behalf. (Jackson Decl. ¶ 8, 14; Hamilton Decl. ¶ 5, 6) All three came to the same conclusion; that there was insufficient merit to file a formal grievance. (Id.) This judgment was the product of an investigation, meetings with Company representatives, review of related documentation and discussions with the Plaintiff. Judgment decisions such as this are not "arbitrary" conduct amounting to a breach of the duty of fair representation. Rather, these sorts

DEFENDANT UNION'S MOTION FOR
SUMMARY JUDGMENT - 11

ROBBLEE DETWILER & BLACK
ATTORNEYS at LAW
================================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121-2392
206.467.6700 · 206.467.7589 facsimile

of judgment calls are within the Union's prerogative, are not judicially second-guessed, and indeed have never been the basis for a finding in the Ninth Circuit that a Union breached the duty of fair representation. Plaintiff cannot prove that the Union breached its duty of fair representation. This is fatal to her discrimination claims.

        3.      Plaintiff has no evidence that the Union treated her less favorably than other similarly situated members.

With respect to the third factor, the Plaintiff must produce evidence that she was treated less favorably than other similarly situated members on the basis of protected characteristics. The Plaintiff's complaints and her appeals were handled in the same way that issues are handled for all members. (Jackson Decl. ¶ 16; Hamilton Decl. ¶ 7) The Union investigated the Plaintiff's complaints. (Jackson Decl. ¶ 5-7, 14; Hamilton Decl. ¶ 6) Union representatives ultimately reached a conclusion that her complaints lacked merit and did not warrant a formal grievance. (Jackson Decl. ¶ 8, 14; Hamilton Decl. ¶ 6) There was nothing discriminatory about the Union's decision making. (Jackson Decl. ¶ 16; Hamilton Decl. ¶ 7) Rather, the decision was based on the merits of the Plaintiff's issues without regard to the Plaintiff's race, sex, age, disability or any other protected characteristics. (Id.) The Plaintiff has no evidence to the contrary.

        4.      Even if Plaintiff could prove a prima facie case of discrimination, The Union has a legitimate, non-discriminatory reason for its actions. Plaintiff is unable to prove that this is a pretext for intentional discrimination.

Even if the Plaintiff was able to present evidence meeting the required prima facie elements, Plaintiff cannot prove that the Union's offered explanation for not pursuing a grievance on Plaintiff's behalf is pretextual. The Union considered all evidence regarding Plaintiff's complaints and decided that the merits did not justify a formal grievance. (Jackson Decl. ¶ 16; Hamilton Decl. ¶ 7) Plaintiff has no evidence discrediting this reason let alone evidence that the underlying reason for the Union's treatment was illegal discrimination.

DEFENDANT UNION'S MOTION FOR
SUMMARY JUDGMENT - 12

ROBBLEE DETWILER & BLACK
ATTORNEYS at LAW
============================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121-2392
206.467.6700 · 206.467.7589 facsimile

### III. THE UNION IS NOT LIABLE UNDER THE EPA FOR ANY ALLEGED DISPARITY IN PLAINTIFF'S PAY.

Plaintiff has no facts or evidence to support her claim against the Union for an alleged violation of the Equal Pay Act ("EPA").  The EPA prohibits employers from paying higher wages for equal work to employees of the opposite sex, with limited exceptions. 29 U.S.C. § 206(d)(1); Stanley v. Univ. of Southern Cal., 178 F.3d 1069, 1073-74 (9th Cir. 1999).  A non-employer labor organization violates the EPA only in the event that it "cause[s] or attempt[s] to cause" an employer to discriminate against an employee in violation of the Act. 29 U.S.C. § 206(d)(2).  This requires the labor organization take an affirmative discriminatory action. Murphy v. Miller Brewing Co., 307 F. Supp. 829, 839 (1969) (dismissing third-party EPA complaint against labor organization due to lack of evidence of union action).

Here, it is uncontested that the Union was not Plaintiff's employer. (Jackson Decl. ¶ 3) As such, the Union could be liable to the Plaintiff under the EPA only if she can show that the Union caused or attempted to cause the Company to discriminate against her.  Yet, Plaintiff has made no such allegations.[5]  Plaintiff does not allege that the Union caused or attempted to cause the Company to discriminate against her in terms of her compensation.  Nor does Plaintiff allege that the Union had any involvement whatsoever with the Company's decisions about her compensation.  In short, Plaintiff has not asserted any facts to show that the Union could be liable for causing or attempting to cause the Company to discriminate against her in violation of the EPA.

Similarly, Plaintiff has no evidence to prove that the Company committed an underlying EPA violation which the Union could have caused or attempted to cause.  The plaintiff bears the

---

[5] Notably, the Notice of Charge of Discrimination Plaintiff filed with the U.S. Equal Opportunity Commission did not allege an EPA violation against the Union. (Detwiler Decl. Ex. A)

DEFENDANT UNION'S MOTION FOR
SUMMARY JUDGMENT  - 13

ROBBLEE DETWILER & BLACK
ATTORNEYS at LAW
========================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121-2392
206.467.6700 · 206.467.7589 facsimile

burden of proof to establish a prima facie case of discrimination under the EPA. 29 C.F.R. § 1620.18(a); Corning Glass Works v. Brennan, 417 U.S. 188, 202 (1974). In the Ninth Circuit, a plaintiff must prove she received "lower wages than the average of wages paid to all employees of the opposite sex performing substantially equal work and similarly situated with respect to any other factors, such as seniority." Hein v. Or. College of Ed., 718 F.2d 910, 916 (1983). To constitute "equal work," the job at issue must require substantially equal "skill, effort, and responsibility," and must be performed under "similar working conditions." 29 U.S.C. § 206(d)(1). Actual job performance requirements, rather than job classifications or titles, are determinative. 29 C.F.R. § 1620.13(e). EEOC v. Maricopa County Cmty. Coll. Dist., 736 F.2d 510, 513 (9th Cir. 1984).

Plaintiff has no evidence nor any factual basis to support a claim that the Company paid her lower wages than her male counterparts for substantially equal work. Nor does Plaintiff have any evidence that any employees – let alone a group of exclusively male employees – received higher pay for "equal work" she allegedly performed. Plaintiff has not alleged that the Company only paid male employees for attending the December 2, 2011 orientation, nor that the Company offered a ratification bonus solely to male employees. Thus, Plaintiff cannot meet her burden to show that she performed "equal work" under "similar working conditions" for which she was discriminatorily compensated. The Court should dismiss the EPA claim.

**IV.   PLAINTIFF HAS NO EVIDENCE TO SUPPORT A CLAIM AGAINST THE UNION UNDER THE LILLY LEDBETTER FAIR PAY ACT.**

Plaintiff has alleged no facts to support a claim that the Union violated the Lilly Ledbetter Fair Pay Act. That Act overrules the Supreme Court's decision in Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618 (2007), and resets the statute of limitations for filing discriminatory compensation claims. Lilly Ledbetter Fair Pay Act of 2009, 111 Pub. L. 2, 123

DEFENDANT UNION'S MOTION FOR
SUMMARY JUDGMENT  - 14

ROBBLEE DETWILER & BLACK
ATTORNEYS at LAW
==============================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121-2392
206.467.6700 · 206.467.7589 facsimile

Stat. 5 (amending various statutes to clarify that a discriminatory compensation decision occurs with each discriminatory wage payment).  As noted above, there is no factual or evidentiary basis to hold the Union liable for any allegedly discriminatory compensation decisions made by the Company.  Nor has Plaintiff alleged that the Union caused or attempted to cause gender-based pay discrimination in violation of the EPA.  As such, no set of facts exist to support Plaintiff's claim against the Union under the Lilly Ledbetter Fair Pay Act.

## V. PLAINTIFF HAS NO EVIDENCE TO SUPPORT A CLAIM AGAINST THE UNION UNDER THE GENETIC INFORMATION NONDISCRIMINATION ACT.

No facts support Plaintiff's claim against the Union under the Genetic Information Nondiscrimination Act ("GINA").  GINA prohibits employers from discriminating against employees based on genetic information, including using genetic information in employment decisions, and "request[ing], requir[ing], or purchas[ing]" genetic information from an employee. 42 U.S.C. § 2000ff-1(a)-(b); <u>Maxwell v. Verde Valley Ambulance Co.</u>, 2014 LEXIS 127370, CV-13-08044 (D. Ariz. 2014) (denying plaintiff's motion for summary judgment where plaintiff did not cite the particular GINA regulations at issue, did not discuss or analyze GINA elements, and did not identify any purported remedy for the violation).  GINA applies to labor organizations on limited grounds, including prohibiting discrimination on the basis of genetic information in membership, training, or apprenticeship programs. 29 C.F.R. § 1635.4(c)-(d).

Plaintiff has no facts or authority to support a GINA claim against the Union.  Her complaint does not cite any applicable GINA regulations, nor does it contain any allegation that the Union discriminated against her on the basis of her genetic information.  Rather, the Union anticipates Plaintiff's GINA claim involves the Company's request that she consent to a medical examination and sign a medical release.  Plaintiff does not allege that the Union was involved in this request, nor that the Union obtained, purchased, or used her genetic information in a

DEFENDANT UNION'S MOTION FOR
SUMMARY JUDGMENT  - 15

ROBBLEE DETWILER & BLACK
ATTORNEYS at LAW
================================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121-2392
206.467.6700 · 206.467.7589 facsimile

discriminatory manner. As such, no facts exist to support Plaintiff's GINA claim against the Union. This claim is properly dismissed.

## CONCLUSION

For the foregoing reasons, the Union's motion for summary judgment should be granted. The Plaintiff's claims against the Union should be dismissed with prejudice.

DATED this 20th day of August, 2015.

s/Kristina Detwiler
Kristina Detwiler, WSBA No. 26448
Aurora Wilson, WSBA No. 45382
Robblee, Detwiler & Black, P.L.L.P.
2101 Fourth Avenue, Suite 1000
Seattle, Washington 98121
Telephone: 206-467-6700
Facsimile: 206-467-7589
Email: kdetwiler@unionattorneysnw.com
          awilson@unionattorneysnw.com

Attorneys for Defendant Union

DEFENDANT UNION'S MOTION FOR SUMMARY JUDGMENT - 16

ROBBLEE DETWILER & BLACK
ATTORNEYS at LAW
==============================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121-2392
206.467.6700 · 206.467.7589 facsimile

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20th, 2015, I electronically filed the foregoing **DEFENDANT UNION'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to the following:

>Crystal Howery
>584 Castro Street
>San Francisco, CA 94114
>Email: acluplaintiff@hotmail.com

>s/Kristina Detwiler
>Kristina Detwiler, WSBA No. 26448
>Aurora Wilson, WSBA No. 45382
>Robblee, Detwiler & Black, P.L.L.P.
>2101 Fourth Avenue, Suite 1000
>Seattle, Washington 98121
>Telephone: 206-467-6700
>Facsimile: 206-467-7589
>Email: kdetwiler@unionattorneysnw.com
>       awilson@unionattorneysnw.com
>
>Attorneys for Defendant Union

CERTIFICATE OF SERVICE - 1

ROBBLEE DETWILER & BLACK
ATTORNEYS at LAW
=============================
2101 FOURTH AVENUE, SUITE 1000
SEATTLE, WA 98121-2392
206.467.6700 · 206.467.7589 facsimile